**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ADITYA KUMAR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1055-D** |
| | ) | |
| **FRED FIGUEROA et al.,** | ) | |
| | ) | |
| **Respondents.**[1] | ) | |

## REPORT AND RECOMMENDATION

Petitioner Aditya Kumar, a noncitizen[2] and Indian national proceeding with counsel, filed a Petition for Writ of Habeas Corpus challenging his detention by U.S. Immigration and Customs Enforcement (ICE) under 28 U.S.C. § 2241. United States District Judge Timothy D. DeGiusti referred the case to the undersigned magistrate judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Respondents timely filed a Response. (ECF No. 11).[3]

For the reasons below, the undersigned recommends the Petition be **GRANTED IN PART**, and that Respondents be ordered, within seven days, either to provide

---

[1] David Venturella was announced as Acting Director of U.S. Immigration and Customs Enforcement on June 1, 2026. He replaces Todd Lyons and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. 1101(a)(3)).

[3] Respondents note that Warden Fred Figueroa of the Diamondback Correctional facility is not a federal official and that their response was not filed on his behalf. (ECF 11:1).

Petitioner with a bond hearing before an immigration judge under § 1226(a) or to release Petitioner.

## I. BACKGROUND AND PETITIONER'S CLAIMS

### A. Factual Background and Procedural History

Petitioner Aditya Kumar is a native and citizen of India who entered the United States on or about December 9, 2022, at or near Lukeville, Arizona. (ECF No. 1-1:11, 17). Following his apprehension shortly after entry, the Department of Homeland Security (DHS) paroled Petitioner into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A), releasing him on December 11, 2022. (ECF No. 1-1:11). Petitioner's parole was authorized until February 9, 2023. (ECF No. 1-1:11). As a condition of his release, Petitioner was directed to report to ICE within sixty days to enroll in alternatives to detention. (ECF No. 1-1:7-9).

In June 2023, Petitioner filed an application for asylum and for withholding of removal with USCIS. (ECF No. 1-1:13). On April 16, 2026, ICE detained Petitioner following a commercial vehicle inspection. (ECF No. 1:2).[4] ICE detained Petitioner pursuant to a Warrant for Arrest of Alien issued under 8 U.S.C. § 1226. (ECF No. 1-1:5).

---

[4] The record reflects a discrepancy as to the date of the encounter. The petition alleges in places that ICE detained Petitioner on April 16, 2026, and elsewhere that the commercial vehicle inspection occurred on May 15, 2026. (ECF No. 1:2, 7). The discrepancy is not material to the analysis, and the undersigned refers to the April 16, 2026, date reflected in the charging documents. Moreover, considering the Petition was filed on May 10, 2026, the undersigned presumes that the inclusion of May 15, 2026, as the date of Petitioner's detention is attributable to a scrivener's error.

The same day, DHS served a Notice to Appear (NTA) charging Petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, and placing him in removal proceedings under 8 U.S.C. § 1229a. (ECF No. 1-1:17). The NTA designates Petitioner an "arriving alien." (*Id.*). Petitioner's removal proceedings are ongoing.[5]

Petitioner was detained at the Diamondback Correctional Facility in Watonga, Oklahoma, when he filed the Petition. (ECF 1:1). Petitioner remains detained there. *See* ICE Online Detainee Locator system, *at* https://locator.ice.gov/odls/#/results (last visited July16, 2026).

### B. Petitioner's Claims

Petitioner advances three counts in his Petition.

- **Count I: Violation of the Due Process.** Petitioner asserts that he holds a protected liberty interest in his continued release after having been released on parole and permitted to reside in the country for over three years. (ECF No. 1:21-23). Petitioner argues his re-detention without notice, an individualized determination, or an opportunity to be heard deprived him of that interest without due process. (*Id.*).

- **Count II: Violation of the Immigration and Nationality Act (INA).** Petitioner argues his detention is under 8 U.S.C. § 1226(a) and that he is entitled to a custody redetermination hearing before an immigration judge. (ECF No. 1:23-24). Petitioner argues his continued detention without a bond hearing violates the INA. (*Id.*).[6]

---

[5] Petitioner is scheduled for a master calendar hearing before the Immigration Court on July 27, 2026. *See* Executive Office for Immigration Review Automated Case Information System, *at* https://acis.eoir.justice.gov/en/caseInformation (last visited July 16, 2026).

[6] Petitioner has not requested a bond hearing before the Immigration Court. Petitioner contends that administrative exhaustion is futile because immigration judges have uniformly adopted the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA

- **Count III: Petitioner asserts a violation of the Administrative Procedure Act, 5 U.S.C. §§ 701–706.** Petitioner contends that his arrest and detention constitute final agency action that is arbitrary, capricious, and contrary to law. (ECF No. 1:25-26).

Petitioner requests that the Court assume jurisdiction over this matter and order his immediate release from custody subject to the conditions that governed his earlier parole. (ECF No. 1:26). In the alternative, Petitioner requests that the Court issue a writ of habeas corpus requiring Respondents to provide him with a bond hearing before a neutral decision-maker at which the Government bears the burden of proof. (Id.). Petitioner further requests an order clarifying that the statutory basis for his detention is 8 U.S.C. § 1226(a) and that 8 U.S.C. § 1225(b)(2)(A) does not apply to him, an order barring his transfer outside the District during the pendency of the petition, the return of his seized property, and attorney's fees and costs under the Equal Access to Justice Act.[7] (Id.).

## II. STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

---

2025), which treats noncitizens who entered without admission as subject to mandatory detention under § 1225(b). (ECF 1:11-12). Respondents do not dispute Petitioner's assertion. The undersigned agrees that Petitioner was not required to exhaust before filing the Petition. *See Soberanes*, 388 F.3d at 1310 (holding exhaustion requirements do not apply to challenges to immigration detention brought in habeas proceedings).

[7] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B). Thus, the Court need not address this request at this juncture.

§ 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III. ANALYSIS

### A. Section 1226(a) Governs Petitioner's Detention

In Count II, Petitioner alleges that his detention is governed by § 1226(a) and that he is entitled to a bond hearing. (ECF No. 1:24-25). Respondents maintain that Petitioner is properly detained under § 1225(b)(1) as an arriving alien, notwithstanding his parole and his years of residence in the interior. (ECF No. 11:3–7). The Court must first determine which statutory provision governs Petitioner's detention. For the reasons explained below, § 1226(a), rather than § 1225(b)(1), governs Petitioner's re-detention.

The two sections of the INA at issue that govern the detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1) (citation modified). Section 1225(b)(1) supplies the expedited-removal process and "governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." A noncitizen who is inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7) and who is arriving in the United States may be ordered removed "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." § 1225(b)(1)(A)(i). If a noncitizen is subject to expedited removal under §

1225(b)(1), he is not entitled to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).

Section 1226(a), by contrast, more generally authorizes the detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See id.* at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

The Tenth Circuit recently rejected a closely related statutory interpretation of § 1225 urged by Respondents. *See Santillan Quiroz v. Mullin*, --- F.4th ---, No. 26-6019, 2026 WL 1876709, at *4-17 (10th Cir. June 30, 2026). Construing § 1225(b)(2)(A), the court concluded that "those who entered the United States without admission and who have lived here since are categorically unable to seek admission while they remain in the country." *Id.* at *7 (citation modified). Accordingly, "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)." *Id.* at *5. While *Santillan Quiroz* concerned a dispute over the proper interpretation of § 1225(b)(2)(A), not § 1225(b)(1), the Tenth Circuit observed that "§ 1225(b)(1) . . . is also limited to the border." *Id.* at *13.

That reasoning controls here. Petitioner entered the United States near Lukeville, Arizona, was paroled into the country, lived in the interior for more than three years, and was then detained during a commercial vehicle inspection far from any port of entry. (ECF No. 1-1:5, 11, 17). Petitioner's removal proceedings under section 240 were initiated on

the same date he was detained. (ECF No. 1-1:17). Judges in this District have routinely found that where a "Petitioner was paroled into the United States, permitted to reside in the interior of the country for several years, pursued his asylum application, and complied with the conditions of his release before being re-detained," his "detention is mo[st] naturally characterized as detention 'pending a decision on whether the alien is to be removed from the United States' within the meaning of § 1226(a)." *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *3 (W.D. Okla. June 29, 2026); *see also Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2-3 (W.D. Okla. May 26, 2026) (finding a noncitizen detained after revocation of § 1182(d)(5) humanitarian parole is held pursuant to § 1226(a)); *Arevalo Castillo v. Figueroa*, No. CIV-26-162-HE, ECF No. 16 (W.D. Okla. July 7, 2026) (finding a petitioner whose humanitarian parole was terminated is entitled to an individualized bond hearing); *Kudusov v. Grant*, No. CIV-26-132-HE, ECF No. 13, at *3-4 (concluding that "noncitizens who remain in the United States after their [humanitarian] parole ended are not arriving aliens" and that "§ 1226(a) governs petitioner's detention, and thus, he is entitled to an individualized bond hearing") (quoting *Quintero v. Olson*, No. 4:26-cv-34-DJH, 2026 WL 596643, at *3 (W.D. Ky. Mar. 3, 2026)). Based on Tenth Circuit precedent and consistent with the approach of the majority of Judges in this District, the undersigned recommends that the Court apply § 1226(a) to govern Petitioner's current detention.

Respondents' own conduct reflects their understanding that Petitioner's detention is governed by § 1226. When ICE arrested Petitioner, it did so pursuant to a Form I-200

Warrant for Arrest of Alien issued under section 236 of the INA, that is, the § 1226 authority, rather than under § 1225. (ECF No. 1-1:5). Section 1225(b) "contains no warrant requirement," so the decision to secure and serve a § 1226 warrant "suggests that [ICE] understood [Petitioner] to be subject to discretionary rather than mandatory detention, since securing such a warrant was unnecessary if Respondents were actually detaining [him] under Section 1225(b)." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 311 (E.D.N.Y. 2025) (citation modified).

**B. Petitioner is not an Arriving Alien Subject to § 1225(b)(1)**

Respondents' position turns on the contention that Petitioner remains an arriving alien subject to mandatory detention under § 1225(b)(1), notwithstanding his parole and its later expiration. (ECF No. 11:3–7). Section 1225(b)(1)(A)(i) reaches a noncitizen "who is arriving in the United States." The verb "is arriving" describes a present, ongoing act, not a status that attaches once and endures indefinitely. A noncitizen arrives upon reaching the border or a port of entry; once admitted, paroled, or otherwise released into the interior, that noncitizen is no longer arriving. *See Rafibaev v. Noem*, No. 26-CV-00461, 2026 WL 607559, at *3 (D. Colo. Mar. 4, 2026) ("someone arriving in the United States is someone who has reached the border or a port of entry," and "upon his parole into the interior of the country, petitioner had arrived in the United States and was no longer a noncitizen arriving in the United States") (citation modified). To describe a noncitizen who entered in December 2022, was paroled, and lived and worked in the community for more

than three years as "arriving in the United States" is to detach the statutory term from its ordinary meaning.

Courts in this District and elsewhere have accordingly rejected the theory that parole under § 1182(d)(5)(A), or its later expiration, leaves a long-resident noncitizen an arriving alien subject to mandatory detention. *See, e.g., Ochilov v. Grant*, No. CIV-26-526-R, 2026 WL 1896139, at *1-2 (W.D. Okla. July 1, 2026) (rejecting the "theory that Petitioner retains his status as an 'arriving' noncitizen subject to mandatory detention under § 1225(b)(1) irrespective of the fact that Petitioner was released and allowed to live in the country for several years"); *Zhakhonov*, 2026 WL 1865418, at *2-3 (finding that "Petitioner's termination of humanitarian parole did not automatically return him to mandatory detention under § 1225(b)(1)" and that "Petitioner's present detention is governed by § 1226(a)"); *Drozdov*, 2026 WL 1470929, at *2-3 ("[R]evocation of parole under § 1182(d)(5) does not render a noncitizen in Petitioner's circumstances subject to detention under § 1225(b)(1)."); *Salgado v. Francis*, No. 25-CV-6524 (VEC), 2026 WL 915304, at *4-6 (S.D.N.Y. Apr. 3, 2026); *Capote Zamora v. Mullin*, No. 26-CV-00538-PAB, 2026 WL 1026810, at *3 (D. Colo. Apr. 16, 2026) ("[R]egardless of whether petitioner was detained pursuant to § 1225(b)(1) or § 1225(b)(2) upon his initial entry into the United States, petitioner's detention did not revert back to § 1225 when his parole was terminated."); *see also Cunha v. Freden*, 175 F.4th 61, 85 (2d Cir. 2026) (rejecting broad reliance on the entry-fiction doctrine in the detention context).

Respondents argue that, because Petitioner's parole was temporary and has expired, § 1182(d)(5)(A) requires that he be "returned to the custody from which he was paroled," so that he must now be treated as though he had never been paroled. (ECF No. 11:7). Section 1182(d)(5)(A) states that upon the expiration or revocation of parole "[a non-citizen's] case shall continue to be dealt with in the same manner as that of any other applicant for admission." § 1182(d)(5)(A). The provision is not a detention authority at all, for it "does not 'affirmatively authoriz[e] detention.'" *Qasemi v. Francis*, No. 25-cv-10029, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)). Courts have accordingly held that "the expiration of . . . parole does not require treating the noncitizen as if they had never been paroled in the first place." *Jean Baptiste v. Bondi*, No. CV 26-02586, 2026 WL 1684433, at *6 (D. Ariz. May 21, 2026) (citation modified). The expiration of Petitioner's parole restored him to the status he held before it was granted, a noncitizen present without admission and subject to removal proceedings under section 240. It did not convert him into an arriving alien subject to the expedited-removal provision.

**C. Petitioner's Remaining Claims**

Respondents assert that Petitioner's due process claims fail because, as a noncitizen present without admission, he is entitled only to the process the INA provides, and that his claim under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, does not lie in habeas. (ECF No. 11:8–12). Because Petitioner is entitled to relief on the statutory ground that his detention is governed by § 1226(a), the undersigned does not

reach his separate constitutional claim or his APA claim. *See Aitiev v. Gantt*, No. CIV-26-997-R, 2026 WL 1894795, at *6 (W.D. Okla. July 1, 2026) (declining to reach remaining claims where the petitioner was entitled to relief on another ground).

### D. The Proper Remedy is a Bond Hearing

Consistent with a common approach in this District, the undersigned recommends that Petitioner be afforded a constitutionally sufficient bond hearing before an Immigration Judge. A bond hearing is the proper remedy for a noncitizen detained under § 1226(a). *See Santillan Quiroz*, 2026 WL 1876709, at *17 n.13; *see also Karimov v. Cerna*, No. CIV-26-304-R, 2026 WL 950130, at *1 (W.D. Okla. Apr. 8, 2026) ("As a remedy, Petitioner requests his immediate release, but the Court concludes that a bond or custody redetermination hearing is the appropriate remedy." (citing *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))).

The undersigned recommends that the Court decline to specify or alter the burden of proof at this stage and leave the conduct of the hearing to the immigration judge. *See Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 (W.D. Okla. Apr. 30, 2026); *Rangel v. Mullin*, No. CIV-26-568-D, 2026 WL 1625653, at *2 n.2 (W.D. Okla. June 5, 2026).

## IV. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days or otherwise release

Petitioner if he has not received a lawful bond hearing within that period. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **July 23, 2026**. If a party wishes to respond to the other party's objections, such response must be filed not later than **July 27, 2026**. *See id.* The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## V. STATUS OF REFERRAL

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on July 16, 2026.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE